May it please the court, I'm Robert Jobe, and I'm appearing today on behalf of the petitioner Francisco Gonzaga-Ortega, a lawful permanent resident who, after being held truly incommunicado in excess of 24 hours, confessed to the DHS that he had knowingly assisted his 15-year-old niece in entering the United States, without proper documentation. The threshold question in this case, which, you know, the government, in their responsive brief, they don't really address our threshold argument head on, is that the DHS violated H.C.F.R. 292.5b in denying Mr. Gonzaga-Ortega access to counsel during the 24-plus hours that he was detained. Because during that period of time, they told him that he could make no phone calls whatsoever. Now, the BIA has held in excess of 40 years, this goes back to a case called Garcia Flores, 17 INN 325, that when DHS or the government violates a regulation that was intended to be of some benefit to the alien and prejudices the interests that are supposed to be protected by that regulation, then the evidence that the government obtained in doing so can be excluded. Now, in this case, the immigration judge never really grappled with the position that we were taking here, because that regulation says quite plainly that it does not, nothing in this paragraph shall be construed to provide any applicant for admission, either in primary or secondary inspection, the right to representation. And when, if you look at his decision, he cites, he quotes that, but he leaves out the phrase applicant for admission, which is really the threshold question in this case. Because if this person, Mr. Gonzaga-Ortega, is not an applicant for admission, as a green card holder, he was entitled to contact counsel during the 24 hours prior to his confession. And whether he's an applicant for admission hinges, we believe, on Section 101A13C of the Act. That sets up a presumption that a lawful permanent resident is not to be regarded as an arriving alien or an applicant for admission unless, among other things, he committed some illegal activity after departing the United States. So we're in a circle. Because he's appeared at the checkpoint with someone claiming to be a U.S. citizen who is not, in circumstances where it's not difficult to attribute his knowledge to him, knowledge of that fact. And so on the surface, it appears that he's committed an unlawful act, which would seem to drop him from the category where he's got the protections of a green card holder. Now, which comes first? Well, see, I guess I disagree with the premise of the question there. I mean, at some point, the young 15-year-old girl, she confessed that she didn't have proper papers. But in order for him to be treated as an applicant for admission, obviously there has to be clear convincing evidence that he knowingly was assisting her mentor. I hear your argument, but he's the grown-up. She's the 15-year-old. She's a relative. Well, it's not hard to infer that he must have known what the situation was. I don't have a lot of trouble in making that inference, and I'm not surprised that the border people would make the same inference. Well, of course. You could certainly draw an inference, Your Honor. The question is, is any such inference clear and convincing evidence? Yeah, I think it probably is. Or at least if it is, don't you have a problem? Well, we may. But, see, this is, you know, if that's the position that the Court would take, and I think remand is still a necessary ingredient here, because at some point there has to be some factual findings about exactly when DHS had clear and convincing evidence that he was an applicant for admission. Let's say it's a circle. All this is happening at the same time, because he's appearing at the checkpoint. If you assume for the moment that there's sufficient information for the agents to reach the conclusion that he's involved in unlawful conduct, that's the same time that he's claiming the right to consult counsel. No. I mean, it's certainly our view that the government didn't have clear and convincing evidence until they took his sworn statement, you know, some 24 hours after he was detained. It was at that point that he admitted that he had knowledge that she didn't have proper papers and that he was assisting her. You know, people may disagree with that, but that's not a factual question that the Court should be addressing in the first instance. Obviously, if there's a dispute about that, it's got to go back on remand. But is there really any doubt? I mean, isn't that the premise of the decision made by the agency when they say that he doesn't have the right to counsel? No. Actually, no, because the argument that we're making here, that as a lawful permanent resident under 101A.13c, he should have been presumed to be an applicant for admission and be given his right to counsel under 292.5b. Actually, the immigration judge never really grappled with that argument and neither did the Board. So these kinds of factual questions that you're exploring here, and I agree that those are factual questions that at some point need to be explored, neither the immigration judge nor the Board ever really endeavored to do so. The whole reason they referred him to secondary in the first place is because the agent already has a suspicion that something's not only up and up. Pardon me, Your Honor? The agent already has a suspicion that something's not only up and up at that point already. That's why they referred him to secondary. Yeah, of course, but suspicion is not clear and convincing evidence. I agree, but I have a hard time believing that for 24 hours the little girl didn't say, I'm coming here legally too at some point in time. Yeah, I mean, at some point she confessed, and we don't know exactly when it was that she confessed. And again, that's a factual question that would have to be explored on remand because obviously until the little girl, the 15-year-old, and there's an issue about whether a confession from a 15-year-old, how much weight to give it. But we don't know exactly when the 15-year-old in this whole process even confessed that she didn't have the proper papers. Well, she didn't have the papers because she didn't have the papers. Well, she was claiming to be a U.S. citizen. And so oftentimes at the Board or when people claim to be a U.S. citizen, if they speak English, they're just going to let them in. So the pivotal, there are some factual questions that need to be explored here about when did she confess and at what point did the government have clear and convincing evidence. Because up until the point where they had clear and convincing evidence, he was entitled to counsel. And what the government was saying here is not only could he not contact counsel, he could contact anybody. How would this have played out, though, in your mind, that the Border Patrol agent should have determined that he was entitled to counsel? Because I thought you said the I.J. was the one who makes that determination. So do they have an I.J. at the border to make that determination? The regulation says that in the event of any examination, an alien is entitled to a right to counsel except in these limited circumstances. And it's our view that until there was some clear and convincing evidence that this person had committed an illegal act after departure, he had to be treated as a lawful permanent resident and given his rights under the regulation. Now, interestingly, you know, the most recent Supreme Court decision, Vartelis, it addresses this point at the end of the decision in the footnotes. And it's kind of an interesting discussion, although it's a little bit difficult for me to understand fully. You're not alone. You know, in that decision, Justice Ginsburg seems to be saying, you know, that in order for there to be clear and convincing evidence, there either has to be evidence of a conviction or an admission, you know. And so that's why I'm focused on the admission. The admission came some 24 hours after the detention. And following Justice Ginsburg's reasoning, you know, that we're not going to impanel some court at the border to determine whether there's clear and convincing evidence, there's only going to be clear and convincing evidence probably in a couple different scenarios. One, there's a conviction, and they have access to that conviction record. Or two, there's a confession. And here, again, the confession didn't come until, you know, he'd been detained in excess of 24 hours. And it's that 24-hour period that concerns me, because during that period he was told that he couldn't communicate with anybody in the outside world. So he was effectively prevented from exercising his rights under the regulation. And obviously the regulation was promulgated to protect people in exactly this situation. I'll still give you a minute. Yes, Your Honor. Time for rebuttal. Let me jump to the end. Did it really matter in the end? Yes. Because the niece ultimately confesses, and there's little real doubt as to what the situation was. So even if they couldn't have obtained a confession from him that they could have used, what really changes in the end? Yeah, I would strongly disagree with that. You know, after 20 years of litigating these kinds of cases, I mean, oftentimes this kind of case almost always turns on the knowledge element. I mean, usually the government has no problem proving that somebody in the car didn't have proper documents. That's really one of the easier parts of their case. The difficulty is always the knowledge. Is it really hard to prove that an uncle who'd been visiting a family didn't know that this niece he was bringing across the border to live with the family wasn't a U.S. citizen? It seems to me that's... It's difficult to prove by clear and convincing evidence the knowledge requirement. Yeah. In my experience, it is. You could just play this out for me. I'm just trying to figure out how this would work. Are you arguing that none of the six exceptions under which an LPR is deemed to be seeking admission may be determined by a Border Patrol agent? Because I think one of them is if they've been gone for a year. Well, I'm torn on this because I think there are two ways of looking at it. One is the statute, 240C3, I think, of the Act, says that the proceedings in front of an immigration judge are the sole and exclusive procedure for determining whether somebody's an invisible. So there's an argument to be made that until an immigration judge makes a conclusion that this person's an arriving alien, he's to be treated as otherwise. But the language in Vartelis would suggest that at least in some circumstances, the border agent can make this call. The real question is under what circumstances. You know, one of the things in 101A13C is if you've been gone in excess of 180 days. So I could see a Border Patrol agent saying, well, the guy's been gone 180 days. We're not going to treat this person. We're going to treat this person as an arriving alien. But when it comes to something like this, whether the person committed an illegal act after departure, I sort of think that the language in Vartelis is telling because there the Supreme Court, in a very analogous situation, is saying the Border Patrol agent's only going to have clear and convincing evidence if there's a conviction or there's a confession. And here, again, there was a confession, but the confession came after 24 hours of incommunicado detention where he was denied his right to counsel. And we think that that's the procedural flaw that has to lead to the vacating of this order. Thank you. May it please the Court. My name is Craig Newell, and I'm here on behalf of the Attorney General of the United States. The Court should deny this petition for review because the agency properly determined that Mr. Gonzaga is inadmissible from the United States because he knowingly aided and assisted his undocumented alien niece into trying to enter this country. And Mr. Gonzaga does not challenge the merits of this determination, but rather claims that the evidence supporting it should be suppressed. His claims have no merit because Mr. Gonzaga had no right to representation and secondary inspection at the border, and his admission to knowingly attempting to smuggle his niece into the country was voluntary. This case does not involve an alien's statutory right to obtain counsel of his own choosing at his own expense. That comes when you are formally placed in removal proceedings. Instead, what he's advocating is for lawful permanent residents to have the right to obtain counsel during inspection at a port of entry by an immigration officer. And there's no basis for this right in the statute or the regulations. And what he does is present a contorted reading of the regulation to advance this cause. Well, I mean, we've got a green card holder. And so but for the exceptions, is it the case that the green card holder, the LPR, wouldn't be treated as an applicant for admission when he arrived at the border? It's my understanding that the reason that this petitioner is treated differently despite his green card is because he's fallen into the exceptions. Correct. Which poses the issue of who makes the determination at what point in time based on what. Right. And so that's the challenge. First, is it taken as your position that the agent at the border has the authority to make that determination? It is, Your Honor. The agent has that authority given to him, and he's required to do so by the statute, the 8 U.S.C. Section 1225b-2. It requires an officer when, during inspection, if an alien seeking admission is clearly not beyond a doubt entitled to be admitted, he's required to detain and place that alien in removal proceedings. The statute unequivocally requires him to make a determination first. Whether a lawful permanent resident falls into one of these exceptions, there's – well, let me backtrack. I think I'm losing myself. Can you answer his point or respond to his point, Mr. Jove's point, that that has to be by clear and convincing evidence? Well, the clear and convincing evidence for it really applies to the burden, the Department of Homeland Security's burden in removal proceedings to render, for the immigration judge to render a final decision that this lawful permanent resident is inadmissible. But what we have here is the question of whether an immigration officer at the border can make these preliminary determinations. Someone such as Mr. Gonzaga comes to the border with an undocumented niece who claims to be a United States citizen but with no document, passport, et cetera, birth certificate to support that. That officer has the right to make a preliminary determination then to then put them into secondary inspection to further investigate the situation. And then once the immigration officer comes to a determination on that, the immigration officer has the authority to charge that alien with inadmissibility. It's clear by regulation that immigration officers have that authority. It's the immigration officer who has the authority to charge someone with something and place them in the removal proceedings. What I think is being confused here is the determinations leading to charging an alien and placing them in proceedings and then with the final determination of whether or not that alien is inadmissible. Well, the difficulty is that if this individual would have the right to counsel but for the determination at some point that fits into this exception, that's not simply a charge, that's a determination that you had a right but you don't have it anymore because you are deemed to have done whichever the exception is, in this case committed the unlawful act. So that's a, it's a different, I mean, until you pass that threshold or unless you pass that threshold, this individual would have the right to counsel. That's a determination. It's a factual finding of some kind. And accepting that the agent has the authority to do it, it's more than suspicion. So we're grappling with the problem of what's the standard that is applied. I mean, petitioners suggest it's clear and convincing, as it would be when you get to a removal hearing. And we're struggling with what was the basis for that determination at each point in time. And counsel suggested that until you got to his admission 24 hours later, there wasn't enough to satisfy and that during the time period up to that admission, he still had the right to counsel because he was deprived of the right to counsel, that there's a problem here. Well, you've heard his argument. Right. Tell me why it's not right. I think because it's coming, so the INA or the regulations don't lay out the burden of the officers at each single step of how they can move on. So we're stuck trying to figure it out. Well, I think you do not have to figure it out because I think it's only presented as a problem because of his reading of the regulation. To read the regulation to say that lawful permanent residents have a right to counsel in primary and secondary inspection, unlike all other aliens who would not, goes against the INA that only gives the right to counsel in removal proceedings. The section of the statute about inspection says nothing about a right to counsel. It also goes against this Court's repeated precedent that Miranda-style warnings, such as a warning that you may remain silent, that you have counsel, are not required and, in fact, are inappropriate in the deportation context. And I think what may also help to come from a different angle is in the section of the INA about inspection, which is 8 U.S.C. section 1225. Let me make sure. Yes. The A-1 says an alien present in the United States who has not been admitted or an alien who arrives in the United States, which is Mr. Gonzaga, shall be deemed for purposes of this chapter, which is a chapter about inspection, an applicant for admission. So when we're talking about inspection, everyone is an applicant for admission. And in some ways, every single person is. If you are a citizen stopped at the border, you – it is under the regulations your burden to show that you are, in fact, a citizen to that officer by showing your passport. It's – what the presumption of not being – seeking admission. It prohibits – or it prevents green card holders from having to go through the whole admissions process, which may require fingerprinting and all that kind of stuff, proof that – travel documents and stuff that other aliens on a visitor visa would have to show. And so – So it's like telling an alien who's a legal permanent resident, when you come to the border, you kind of get to go to the express lane, and if you're not, you get to come in the more laborious process. Right, right. So unless there's any – if there's a suspicion that you fall within one of these six exceptions, yeah, you are moved into the more laborious primary, secondary inspection process. If you're not, you get to sail through, you know, pretty much as if you were a citizen. Can you distinguish Vartelis? The opposing counsel, Mr. Job here, highlighted that that was very compelling, the holding in Vartelis. Oh, Vartelis. I think that Vartelis actually in some ways also plays to the fact – it can be read differently that that – that it kind of presupposes – he's allowed to make these determinations. He doesn't have to go through some grand inquiry. He can kind of go based on, you know, what a police officer would do based on his reasonable suspicion or whatever. That's something wrong as a foot before him. And the way Justice Ginsburg worded many parts of her decision, it seems that this exception – you are seeking admission at the border. It says lawful permanent residents are regarded as seeking admission in the United States if they fall into any of these six enumerated categories. And then you have to go through admission procedures. Admission procedures would only be occurring at the border. To say this presumption waits until – this presumption, you get it until the very, very end when the immigration judge issues your deportation order would render it nothing. And I see my time. Well, I have one more question. Is a 30-hour detention common? I'm just curious how long could an alien be detained before his confession would no longer be voluntary. I'm not sure what is common at all. It depends on how many other aliens before him they need to get to. And he, during that time, does not have a right to seek counsel. And he, in his record of sworn statements, said that he was treated fine, he said. So I think even though it is admittedly lengthy, I think because of the situation at the border that that unfortunately happens. Well, how long could someone be detained before his confession would no longer be voluntary? I don't know. And I don't believe there's any case law that says after a certain amount of time, this falls into coercion opposed to voluntary. Thank you. Thank you, Your Honors. The government's right that the INA itself only grants a right to counsel in the removal proceedings, but obviously the agency can go beyond what the statute does. And that's what they've done in this case with 292.5B. Well, it's a peculiar regulation because, frankly, except for the clarification, I would not have inferred from the regulation that it applied at the border anyway. It sounded like it was set up, but it is what it is. It is what it is, exactly. But the government's position, frankly, I find a little bit frightening because they're saying that this important right, the right to counsel, will depend on whether somebody at the border has a suspicion that this person committed an illegal act. The right to counsel is too important to hand it over to some agent at a border that is unsupervised. It's going to get handed to the agent at the border because you can't wait. It would make no sense to wait until you got to the immigration court. True, but the only way that you can really protect this right, and I think what the Constitution requires is that before you deny this person a right, before you declare him to be an applicant for admission, there has to be clear and convincing evidence of that. And until there's clear and convincing evidence, he had a right to counsel. And so the real question in this case, and I go back to what you were saying, Your Honor, because I do believe the real question in this case is when did they have that clear and convincing evidence and what did it consist of? And on that point, there needs to be an evidentiary hearing. Thank both counsel for the helpful arguments. The case just argued is submitted.
judges: Collins, Clifton, Murguia